IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                            **REPORT AND RECOMMENDATION**

v.

                                            10-cr-00215-RJA-JJM -02

JEFFREY A. WAINWRIGHT,

                      Defendant.
_____

        This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings [2].[1] Before me is the motion of defendant Jeffrey A. Wainwright to suppress statements [23].[2] An evidentiary hearing was held on April 25 and August 3, 2012 [64, 65] at which ATF Special Agent Steven Dickey and City of Buffalo Fire Marshal James O'Neill testified on behalf of the government, and defendant and his wife, Dina Ciliento, testified on defendant's behalf. Thereafter, the parties filed post-hearing briefs [71, 72]. For the following reasons, I recommend that the motion be denied.

**BACKGROUND**

        Defendant, along with co-defendant John A. Walsh, is charged in an indictment [1] with conspiracy and destruction of a building by fire, in violation of 18 U.S.C. §§2, 844(i) and 844(n). On February 11, 2010, defendant gave a statement to SA Dickey, Fire Marshal O'Neill, and Fire Marshal trainee William Buyers in which he admitted his involvement with the

---

[1]     Bracketed references are to CM-ECF docket entries.

[2]     Defendant has advised my chambers by e-mail dated October 5, 2012 that the remaining aspects of his pretrial motion [23] are moot.

alleged crimes [69-1]. He argues that this statement "and any subsequent statements should be suppressed". Defendant's Post-Hearing Brief [72], p. 5. However, since defendant neither identifies any "subsequent statements" nor argues why they should be suppressed, I will consider only his February 11, 2010 statement.

In his initial motion, defendant claimed that "he was not advised of his Constitutional rights at the time he made [the] statement and therefore did not knowingly, intelligently and voluntarily waive said rights prior to the giving of the statement" (O'Rourke Affirmation [23], ¶27). However, following the hearing he changed course, admitting that he *had* been advised of those rights, and arguing instead that he had been denied his right to counsel: "When Wainright was advised of his constitutional rights under *Miranda*, he advised the Officers that had an attorney specifically for this case. He further advised them that the lawyer should be present . . . . [O]nce a defendant invokes his Fifth Amendment right to counsel, police must cease custodial interrogation". Defendant's Post-Hearing Brief [72], pp. 2, 4.[3]

That argument "should not even be considered, since it was not raised in defendant's pre-hearing motion . . . . 'Just as a failure to file a timely motion to suppress evidence constitutes a waiver, so too does a failure to raise a particular ground in support of a motion to suppress.'" United States v. Godbey, 2012 WL 4061215, *4 (W.D.N.Y. 2012) (McCarthy, M.J.), adopted, 2012 WL 4061085 (Arcara, J.) (*quoting* United States v. Restrepo–Rua, 815 F.2d 1327, 1329 (9th Cir.1987)). I will nevertheless address it in the alternative.

---

[3] Although issues other than the alleged violation of defendant's Fifth Amendment right to counsel were discussed at the outset of the suppression hearing (April 25, 2012 hearing transcript [64], p. 3), these issues were not addressed in either defendant's pre- or post-hearing briefs, and therefore will not be considered here.

## ANALYSIS

A.     **Was Defendant In Custody at the Time of His Statement?**

"[T]he Fifth Amendment right to counsel applies when a defendant is subject to *custodial* interrogation". United States v. Medunjanin, 2012 WL 1514766, *7 (E.D.N.Y. 2012) (emphasis added). Therefore, unless defendant's statement was taken while he was in custody, I need not determine whether he requested counsel, because he had no such right. *See* United States v. Ellison, 632 F.3d 727, 730-31 (1st Cir.), cert. denied, 131 S.Ct. 295 (2010) ("Ellison also argues that the interrogation should have ceased once he invoked his right to counsel . . . . But even if Ellison had clearly expressed a desire to speak with a lawyer, he could not have invoked any constitutional right to do that in a non-custodial interrogation conducted before he was formally charged").

The fact that defendant was given Miranda warnings "did not, by itself, convert the non-custodial interview into a custodial interrogation". Mastowski v. Superintendent, 2011 WL 4955029, *10 (W.D.N.Y. 2011) (Telesca, J.). An interrogation is "custodial" only where (1) "a reasonable person would not have thought himself free to leave", and (2) "in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest". United States v. Newton, 369 F.3d 659, 672 (2d Cir.), cert. denied, 543 U.S. 947 (2004). Neither element is present here. When asked "Did they take you into custody, did they put handcuffs on you?", defendant replied "No" (April 25, 2012 hearing transcript [64], p. 83). He stated that he "went there on [his] own voluntarily" to give the statement (id., p. 100), that he was "[n]ever physically restrained" (id., p. 87), that he

"was never forced to do anything" (id.), and that "they kept telling me that I wasn't under arrest" (id., p. 88).

Since I conclude that defendant was not in custody at the time of his interrogation, he had no Fifth Amendment right to insist that questioning cease by requesting counsel.

**B.      Did Defendant Unambiguously Assert His Right to Counsel?**

Even if he had been in custody, defendant would have had to "unambiguously request counsel" in order to terminate questioning. Davis v. United States, 512 U.S. 452, 459 (1994). "If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal . . . the police are not required to end the interrogation." Berghuis v. Thompkins, 130 S.Ct. 2250, 2259 (2010). Thus, if "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning . . . . The *likelihood* that a suspect would wish counsel to be present is not the test". Id. (emphasis in original).

While defendant's statement [69-1] mentions that he gave his co-defendant money to hire an attorney for both of them in connection with local charges arising from the incident, "the mere mention of an attorney . . . is not an unambiguous invocation of the right to counsel". United States v. Straker, 596 F.Supp.2d 80, 92 (D.D.C. 2009); United States v. Siraj, 424 F.Supp.2d 509, 514-15 (E.D.N.Y. 2006) (rejecting argument that defendant invoked his right to counsel since the government knew that he was represented).[4]

---

[4]      In any event, defendant admitted that he had never met the attorney and that the relationship had terminated by the time of his statement, since the local charges had been dropped. April 25, 2012 hearing transcript [64], pp. 79-80, 91.

Although defendant now claims to have "testified that he clearly and unequivocally told the officers interrogating him that he was represented by counsel and that his counsel should be present" (defendant's Brief ([72], p. 4), that was not his testimony. SA Dickey and Fire Marshal O'Neill both testified that defendant never stated that he wished to have an attorney present (April 25, 2012 hearing transcript [64], p.13; August 3, 2012 hearing transcript [65], p. 141), and defendant himself testified that "my wife said that to me several times, why don't you contact your attorney and have him deal with this . . . . And I told her [that] I was told several times by Mr. O'Neill that I was not being charged with anything, and as long as I cooperated, I would not be charged with anything".[5]

Defendant elsewhere testified that he:

- - "asked [SA Dickey] should I get a lawyer?" (April 25, 2012 hearing transcript [64], p. 58);

- - "asked them several times why my lawyer wasn't being asked about this" (id., p. 59);

- - "asked [Fire Marshal O'Neill] why is my lawyer not present for this" (id., p. 62);

- - "asked [SA Dickey] why my lawyer is not present with this, do I need to contact my lawyer about this" (id., p. 66).

These statements, even if made, are not sufficient to trigger the cessation of questioning. See United States v. Oehne, ___F.3d___, 2012 WL 5259039, *3 (2d Cir. 2012)

---

[5] SA Dickey denied that such a promise was made to defendant (April 25, 2012 hearing transcript [64], pp. 30-31). Moreover, in neither his pre- nor post-hearing briefs does defendant argue that he was deceived into giving his statement.

("Statements such as: 'Maybe I should talk to a lawyer' . . . 'Do you think I need a lawyer?' . . . and a suspect's statement that he 'was going to get a lawyer' . . . have been found to be insufficient to constitute an unambiguous request for counsel"). *See also* United States v. Plugh, 648 F.3d 118, 124 (2d Cir. 2011), cert. denied, 132 S.Ct. 1610 (2102) ("Plugh's only statements - 'I am not sure if I should be talking to you' and 'I don't know if I need a lawyer' - were appropriately deemed ambiguous").

"We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who . . . will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves. Full comprehension of the rights to remain silent and request an attorney is sufficient to dispel whatever coercion is inherent in the interrogation process." Davis, 512 U.S. at 460.

Defendant argues that "[t]he fact that [he] gave a statement after being read his *Miranda* rights does not demonstrate that he understood his right to counsel and intelligently and knowingly relinquished it". Defendant's Brief [72], p. 4. However, at the hearing, defendant testified that he told SA Dickey and Fire Marshal O'Neill that he understood his rights and nevertheless wished to speak with them ([64], pp. 76-77). Moreover, the statement which defendant both initialed and signed ([69-1], p. 1) contained the Miranda warnings, followed by these questions: "Do you understand each of these rights that I have explained to you? . . . . Having these rights in mind to you wish to talk to us now?" Defendant answered "yes" to each question, and at the hearing he confirmed that "everything in that statement is the truth . . . . Every detail in that statement is accurate" ([64], p. 75).

Therefore, even if I had found defendant's interrogation to be "custodial", he did not unambiguously request counsel in a manner sufficient to terminate his questioning.

**CONCLUSION**

For these reasons, I recommend that defendant Wainright's motion to suppress [23] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by December 27, 2012 (applying the time frames set forth in Fed. R. Crim. P. ("Rules") 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not

raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

DATED: December 10, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge